# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WOSEY BUTLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIV-08-608-D |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Wosey Butler ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her applications seeking disability insurance benefits and supplemental security income payments in August, 2005 [Tr. 55- 57 and 366 - 369]. She alleged that she suffers from chronic obstructive pulmonary disease and a lower back problem which became disabling as of January, 2002 [Tr. 55, 81 - 82, and 366].

Plaintiff's claims were denied initially and upon reconsideration [Tr. 28 - 30, 51 - 54, 371 - 374, and 376 - 378]; at Plaintiff's request an Administrative Law Judge ("ALJ") conducted a November, 2006 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 31 and 379 - 398]. In his August, 2007 decision, the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other generally available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 15 - 25]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 5 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff maintains that the ALJ's assessment both of her residual functional capacity ("RFC")[1] and of her credibility lacks the support of substantial evidence. Further, Plaintiff contends that the ALJ's decision fails to evaluate her obesity.

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

**Analysis**

    **Plaintiff's Claimed Impairments**

    The ALJ provided the following summary of the testimony given by Plaintiff – a forty-three year old with a limited education [Tr. 383] – at her administrative hearing:

> At the time of the hearing, the claimant testified she sustained an on-the-job injury in 1999,[2] at which time she "ruptured two discs in her back." The claimant stated she subsequently filed for workers' compensation, which was ultimately settled out of court.[3]
>
> The claimant also reported she has suffered from asthma for the past 19 years and in January 2002, was diagnosed with bronchitis, which later developed into pneumonia. Additionally, the claimant complained of pain in her hips, left more than right, which radiates to her feet. The claimant also reported difficulties related to sun exposure. In reference to further impairments, the claimant testified she suffers from gastroesophageal reflux disease, which she "takes medication for," as well as incontinence. With respect to incontinence, the claimant testified she "needs surgery to correct this," but has no insurance.[4]
>
> The claimant further reported impairment related to depression, stating she sits at home and "worries about stuff." The claimant admitted this "came on" when she was caring for her ill father, who passed away in June 2005.

---

    [2]Nonetheless, it is Plaintiff's claim that her disability did not begin until January 1, 2002 [Tr. 55, 82, and 366]. She testified that she developed bronchitis in January, 2002 and that "the doctor took me off of work because it changed, it went into pneumonia and I couldn't get rid of it because the job I had was, I had to work outside." [Tr. 385]. This is consistent with her reported statement in an interview conducted in connection with her benefit claims "that her condition really only bothered her since 01/01/2002, and that her lack of work before that did not have anything to do with a disability." [Tr. 79 - 80].

    [3]Plaintiff testified that she did not receive a worker's compensation award but did receive $5000 from her employer [Tr. 385].

    [4]Plaintiff further testified that she is able to receive health care through the Indian Health Service but that they had referred her to another physician for possible bladder surgery [Tr. 388].

>The claimant also testified to difficulties sleeping, crying spells, low energy level, and feelings of guilt and worthlessness. She stated she used to like to go to "pow-wows and dance," but stated she can no longer do this, due to lower back pain.[5] The claimant described the pain as constant and dull, but "sometimes sharp," which radiates down her left leg.
>
>In reference to limitations, the claimant stated she is able to sit 30-45 minutes, but stated her "leg goes numb if she sits too long." She further stated she can stand 15-20 minutes, and walk a block, however, she stated then she experiences back pain and shortness of breath. Additionally, the claimant testified she can lift 10 pounds, but then admitted that her physician limited her to "19 pounds."
>
>With respect to her allegations related to asthma, the claimant testified she suffers from repeated bronchial infections, and wheezing and coughing and stated she uses an inhaler "when she needs it." The claimant also stated she uses a nebulizer in the evening.
>
>In reference to daily activities, the claimant testified three days per week, she "does not get out of bed," because she hurts too much. She then stated her "daughter helps with household chores." Specifically, the claimant stated she "tries to live as little as possible," due to "her legs and back." She further stated she watches television and goes out to eat once per week. The claimant also reported that her medications "hurt her stomach and any exertion causes shortness of breath. Additionally, the claimant stated she is able to drive 45 minutes to an hour "before she has to stop," stating she has to put a pillow behind her back, when driving."

[Tr. 19 - 20].

The ALJ ultimately concluded that Plaintiff was severely impaired by obesity, lumbar disc disease with sciatica, osteoarthritis of the left hip, and chronic obstructive pulmonary disease [Tr. 17]. In considering Plaintiff's claimed depression, hypertension, and

---

[5]She also testified that she used to like to go to pow-wows every weekend to stay busy but, since losing her father, had been unable to go and enjoy herself because "it reminds me of him." [Tr. 389].

gastroesophageal reflux disease, the ALJ found that these impairments were not severe [Tr. 18]. As to the depression claim, the ALJ noted the record showed that Zoloft had been prescribed when Plaintiff was caring for her ailing father and that she continued to take it, reporting occasional moodiness and difficulty sleeping.[6] [Tr. 17]. The ALJ further observed that Plaintiff "has also admitted that she 'does not consider herself to be functionally limited, due to depression.'"[7] *Id.* In connection with Plaintiff's hypertension, the ALJ found no evidence of end organ damage and, with regard to her alleged reflux disease, found that "the alleged severity is not substantiated by the evidence of record." [Tr. 18]. Finally, the ALJ found that Plaintiff's claims that the sun caused her to break out in blisters and of incontinence were not substantiated by the record. *Id.*

Upon consideration of the limitations resulting from her impairments, the ALJ determined that Plaintiff retained the capacity to lift and/or carry ten pounds, to stand and/or walk for at least two hours in an eight-hour workday with normal breaks, and to sit for at least six hours in an eight-hour workday with normal breaks. *Id.* In addition, Plaintiff was restricted from concentrated exposure to fumes, odors, dust, and gases. *Id.*

---

[6] In her September, 2005 benefit filings, Plaintiff advised that she had difficulty sleeping because of pain [Tr. 116].

[7] The record contains a February 24, 2006, Report of Contact between the disability determination office and Plaintiff regarding her mental status [Tr. 124]. Plaintiff described her moodiness and sleep difficulties, stating that she had a great deal of physical pain due to her back and attributing her moodiness and restless nights to that pain. *Id.* She advised that "[s]he does not consider herself to be functionally limited due to depression." *Id.*

On appeal, while Plaintiff generally contends that the ALJ's RFC assessment fails to describe how the medical evidence supports his conclusions as to Plaintiff's capabilities [Doc. No. 16, p, 3], she points with specificity only to the ALJ's failure to "include any rationale for disregarding the limitations found by [consultative examiner] Dr. Williams, *id.* at 4, and to his failure to include the mild mental limitations which Dr. Goodrich, a State agency consultant, noted in her Psychiatric Review Technique Form. *Id.* at 5. Consequently, because Plaintiff has not directed the court to any evidence that she maintains would support greater limitations resulting from reflux disease, hypertension, sun allergy, incontinence, asthma, or chronic obstructive pulmonary disease, the following discussion of the medical evidence will be limited to Plaintiff's musculoskeletal and depression claims.

**RFC Assessment**

As to Plaintiff's allegations of back, hip, and leg disorders, the ALJ's decision reflects as follows:

> The claimant was seen by Sidney Williams, M.D., on October 5, 2005. The claimant presented stating she sustained an on-the-job injury in 1999, which resulted in two disc herniations. At that time, the claimant stated Dr. Fields recommended surgery, but was "overruled" by the workers' compensation system. Therefore, the claimant reported she did not proceed with surgery, stating she "has experienced pain in her back since that time." Additionally, the claimant complained of hip pain and chronic and obstructive pulmonary disease.
>
> Upon examination, Dr. Williams noted restriction of lumbar motion at 45 degrees flexion and some substantial restriction of motion in the left hip. Dr. Williams further noted positive ankle jerk and knee jerk reflexes bilaterally and loss of knee jerk reflex on the left. Additionally, Dr. Williams found evidence of positive straight leg raising signs on the left, stronger than the right.

> In summary, Dr. Williams stated he observed the claimant to have moderately severe difficulty getting up and down from a seated position and she limped favoring the left hip, walking about 50 percent of expected speed. However, Dr. Williams opined the claimant does not require an assistive device. Dr. Williams did note the claimant becomes more unstable when she attempts to heel walk, toe walk, perform deep knee bend maneuvers, or pivots and turns, but stated this is not so severe as to require a cane or other assistive device.
>
> The impression was lumbar disc disease with sciatica, unresolved, severe osteoarthritis of the left hip, and chronic obstructive pulmonary disease, by history.

[Tr. 21 - 22, record reference omitted].

Next, the ALJ turned to the medical opinion evidence proffered by the State agency medical consultants following their review of the medical record:

> On October 27, 2005, Luther Woodcock, M.D., a DDS physician, completed a Physical Residual Functional Capacity Assessment. Dr. Woodcock stated the claimant suffers from lumbar disc disease with sciatica and osteoarthritis of the left hip. Dr. Woodcock opined, based on the evidence of record, that the claimant is able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, *stand and/or walk about 6 hours in an 8 hour workday*, sit about 6 hours in an 8 hour workday, and push and/or pull on an unlimited basis.
>
> Dr. Woodcock further stated the claimant can occasionally stoop and frequently climb ramps, stairs, ladders, ropes and scaffolds, balance, kneel, crouch and crawl. Additionally, Dr. Woodcock noted no manipulative, visual, communicative or environmental limitations. This decision was also affirmed by Shafeek Sanbar on March 15, 2006.
>
> On February 24, 2006, Carolyn Goodrich, a DDS physician, completed a Psychiatric Review Technique Form. Based on the evidence of record, Dr. Goodrich found the claimant's alleged depression to be non-severe. Specifically, Dr. Goodrich stated the claimant does suffer from a depressive syndrome characterized by sleep disturbance and feelings of guilt and worthlessness. However, Dr. Goodrich found the claimant to be only "mildly" limited in reference to activities of daily living; "mildly" limited with respect

>to maintaining social functioning; "mildly" limited in reference to maintaining concentration, persistence or pace; with no episodes of decompensation.

[Tr. 22, emphasis added and record references omitted].

Following his review of the relevant medical evidence, the ALJ found that Plaintiff's claim of *disabling* pain was not credible – a determination which will be addressed in the next section – but concluded that she did suffer from pain "as a result of her back and hip." [Tr. 23]. He then found that Plaintiff was able to "perform[ ] work activity that does not require her to be on her feet[,]" *id.,* and his corresponding RFC assessment limited Plaintiff to sedentary work [Tr. 18].

Plaintiff challenges the ALJ's decision, claiming it fails to "include any rationale for disregarding the limitations found by Dr. Williams." [Doc. No. 16, p. 4]. Contrary to Plaintiff's premise, however, the ALJ did not disregard Dr. Williams' stated limitations[8] but specifically determined in accordance with Dr. Williams' observations that Plaintiff experienced pain with resulting difficulty in getting up and down from a seated position and in ambulating and, thus, would be restricted insofar as working on her feet [Tr. 23]. In this same vein, neither did the ALJ – as Plaintiff asserts, [Doc. No. 16, pp. 4 - 5], give greater weight to the opinions of the State consulting physicians than he did to Dr. Williams' assessment. The State agency medical consultants found that Plaintiff had the capacity to stand and/or walk for six hours in an eight-hour workday and, consequently, could perform

---

[8]Dr. Williams did not complete a function-by-function capacity assessment; Dr. Williams' summary of his observations – labeled in the report as a "Functional Assessment" [Tr. 305] – was repeated in the ALJ's decision [Tr. 22]. *See supra* p. 8.

light work[9] [Tr. 311]. Instead of adopting this assessment[10] for light work, however, the ALJ credited Dr. Williams' findings, limiting Plaintiff to sedentary[11] work. Moreover, Plaintiff

---

[9]According to Social Security regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. . . .

20 C.F.R. §§ 404.1567(b), 416.967(b).

[10]With regard to the opinions of State agency physicians, Social Security regulations provide that

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . .

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

[11]Social Security regulations provide that

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

does not point the court to any limitation noted by Dr. Williams with regard to Plaintiff's ability to sit[12] nor does she suggest that Dr. Williams found her unable to perform the occasional standing and walking required by sedentary work. The ALJ did not commit error as asserted by Plaintiff in his assessment of her physical RFC.

Turning to Plaintiff's mental functional capacity, the ALJ concurred with the opinion of the State consultant, Carolyn Goodrich, that Plaintiff's depressive syndrome was a non-severe impairment [Tr. 17, 18, and 320 - 333]. Thus, both Dr. Goodrich and the ALJ concluded that Plaintiff's depression "does not significantly limit [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). In arriving at her conclusion, Dr. Goodrich followed the special technique required by Social Security regulations, 20 C.F.R. §§ 404.1520a, 416.920a, and completed a Psychiatric Review Technique Form [Tr. 320 - 333] in which she assessed Plaintiff's limitations and restrictions resulting from her depressive syndrome [Tr. 323] in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. Dr. Goodrich found that Plaintiff's depressive syndrome caused Plaintiff only mild difficulties in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace [Tr. 330]. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

---

[12]Plaintiff advised Dr. Williams that she was only able to sit for five to ten minutes [Tr. 304].

On appeal, Plaintiff maintains that "the ALJ decision simply dismissed the Claimant's depression as not severe and did not include the 'mild' limitations imposed by Dr. Goodrich in her residual functional capacity, or in his hypothetical question to the vocational expert." [Doc. No. 16, p. 5].  The Social Security Ruling regarding the assessment of a claimant's RFC – Social Security Ruling 96-8p, 1996 WL 374184 – cautions, however, against such inclusion: "The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  *Id.* at *4. Moreover, the ALJ specifically relied on Plaintiff's own statement that she does not believe that she is functionally limited by depression [Tr. 17 and 124].  "[W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.* at *3. The ALJ did not err in concluding that Plaintiff's RFC was not restricted by her non-severe mental impairment.

**Credibility**

Following his review of Plaintiff's testimony with regard to her symptoms – including her testimony that she hurts too much to get out of bed three days per week [Tr. 20 and 392 - 393] – and of the medical record, the ALJ concluded that

> The severity of the claimant's symptoms is disproportionate in comparison to the usual expected severity of her condition.  Therefore, the alleged effect of the claimant's symptoms on activities of daily living and basic task

> performance is not consistent with the total medical and non-medical evidence in the file. Also, the claimant's statements about her impairments and their impact on her ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms and objective documentation in file. Specifically, the physical findings and supporting clinical data do not closely corroborate or correlate with the claimant's subjective complaints.

[Tr. 22]. The ALJ went on to find that while Plaintiff described limited daily activities, the "relatively weak medical evidence" did not support her claim of *disabling* symptoms [Tr. 23]. In this connection, he found that Plaintiff did suffer from pain resulting from her back and hip impairments but concluded that she could perform work activity that did not require her to be on her feet. *Id.* The ALJ also noted "that the description of the symptoms and limitations, which the claimant has provided throughout the record,[13] has generally been inconsistent and unpersuasive[.]"

---

[13]The undersigned's review of the record supports the ALJ's finding in this regard. For example, Plaintiff's statements to Dr. Williams on the day of her consultative examination – October 5, 2005 [Tr. 303 - 309] – about her ability to function reflect a *marked* decline from her abilities reported just sixteen days earlier in a September 19, 2005 Function Report [Tr. 115 - 122]. In her signed report, Plaintiff stated that she was a babysitter for her grandchildren from time to time [Tr. 116], that she could still do most of the work she did before her illnesses/injuries/conditions but "can not use many of the household chemicals," *id.,* that she had no problem with any aspect of her personal care, *id.,* that she cooked complete meals on a daily basis unless her pain was too great [Tr. 117], that she performed "regular" housekeeping and laundry, *id.,* that she shopped for groceries once a week [Tr. 118], that she "work[ed] with plastic canvas to make car ornaments" on a daily basis [Tr. 119], that she occasionally went to community events and attended and watched pow-wows, *id.,* and, that she could walk two or three blocks without needing to stop [Tr. 120]. Sixteen days later, however, Plaintiff advised Dr. Williams of pain of such severity that it precluded her from sitting for more than five to ten minutes and standing for more than five minutes without changing position [Tr. 304], from walking more than one block, *id.,* and interfered with her ability to carry things, *id.,* to climb steps, *id.,* to bath herself, *id.,* and, to use the toilet. *Id.*

Plaintiff contends that the ALJ's "decision provides no evidentiary basis for concluding that her claims are "disproportionate or not supported by objective evidence.". [Doc. No. 16, p. 8]. As support for this theory, Plaintiff directs the court to evidence of her diagnosis of spondylolisthesis – a lumbar spine disorder – in October, 2000 and of the symptoms of that condition. *Id.* at 6 - 7. Nonetheless, as previously discussed in connection with the RFC assessment, the ALJ credited Dr. Williams'[14] subsequent diagnosis of lumbar disc disease as well as the doctor's functional assessment. Accordingly, the ALJ acknowledged the severity of Plaintiff's lumbar spinal disorder and did not, as Plaintiff maintains, ignore "objective medical evidence." [Doc. No. 16, p. 7].

While concluding that Plaintiff's back impairment "could reasonably be expected to produce the alleged symptoms," [Tr. 20], the ALJ determined that the medical findings of record could not support the intensity of the symptoms reported by Plaintiff [Tr. 23]. Thus, the ALJ, as required, considered Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d] them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and

---

[14]The history taken by Dr. Williams – and repeated by the ALJ [Tr. 21] – reflects that Plaintiff related her 1999 injury and disc herniation diagnosis by Dr. Field as well as the fact that surgery was recommended but not performed [Tr. 303].

14

>relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

Here, the ALJ focused on the objective medical evidence and Plaintiff's lack of consistency. As to the medical evidence of record, there is simply no objective evidence from any medical source that Plaintiff suffered from functional limitations that would preclude her performance of sedentary work. Further, the ALJ noted correctly that Plaintiff's reports of her symptoms and limitations were inconsistent. The ALJ's conclusion – that Plaintiff's subjective complaints are not entirely credible – is well supported by substantial evidence. An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations were not entirely credible. Moreover, "so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000), " a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Id.* Plaintiff has failed to establish that the ALJ committed any error in connection with his assessment of Plaintiff's credibility.

### Obesity

Here, Plaintiff contends that although the ALJ concluded that Plaintiff was severely impaired by obesity, he erred by failing to assess the impact of that obesity upon her ability

to function as required by Social Security Ruling 00-3p[15] pertaining to the evaluation of obesity [Doc. No. 16, p. 8]. Plaintiff argues that "[t]he ALJ decision does not discuss how or whether the Claimant's obesity affected her functional limitations, or what weight was given to Claimant's obesity in determining her residual functional capacity." *Id.*

At her administrative hearing, Plaintiff submitted an exhibit reflecting her body mass calculation [Tr. 136 and 382]. Based upon the height and weight entered by Plaintiff in the calculation, she had a body mass index of 44.9 which indicated obesity. The ALJ subsequently found that Plaintiff's obesity would significantly limit her ability to perform basic work activities and was, consequently, severe [Tr. 17]. *See* SSR 02-1p, at *4. He specifically stated that he had evaluated Plaintiff's obesity under the criteria set forth in SSR 02-1p and found that it did not meet or equal a listed impairment, a finding that Plaintiff has not challenged on appeal [Tr. 18]. As to the effect of Plaintiff's obesity on her residual functional capacity, this Report and Recommendation has previously documented the ALJ's reliance upon the functional assessment provided by Dr. Williams, the consultative examining physician [Tr. 18, 22, 23, and 303 - 309]. Dr. Williams' report, in turn, reflects that his functional assessment was informed by Plaintiff's height – 63.5" [Tr. 304] – her weight – 248 pounds, *id.,* – and by the central obesity of her abdomen [Tr. 305]. The ALJ committed no error in assessing the impact of Plaintiff's ability to function as a result of her obesity.

---

[15]The undersigned will refer instead to Social Security Ruling 02-1p, 2000 WL 628049 which supercedes SSR 00-3p.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by April 29, 2009, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 9th day of April, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE